**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ATINUS WORKS, LLC,** | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-24-614** |
| **v.** | * | |
| **GREENCLEAN, INC.,** | * | |
| **Defendant.** | * | |

* * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff and counter-defendant Atinus Works, LLC ("Atinus") initiated this civil action against defendant and counter-plaintiff Greenclean, Inc.[1] ("Greenclean"), alleging breach of contract and unjust enrichment. ECF No. 1, ¶¶ 23–34. Greenclean subsequently filed a Counterclaim against Atinus and Third-Party Complaint against Michael Greenfield, a representative of Atinus, asserting claims for tortious interference with contractual relations and prospective business advantage and civil conspiracy. ECF No. 38. This matter is before the Court on Atinus and Greenfield's Motion for Summary Judgment (ECF No. 55). The motion is fully briefed, and no hearing is necessary to resolve it. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the motion is granted in part and denied in part.

[1] The docket shall be modified to reflect the correct spelling of this party's name.

## I. FACTUAL BACKGROUND[2]

In September 2022, Greenclean, a Virginia-based company, was awarded a one-year term contract with the Court Services and Offender Supervision Agency ("CSOSA") to provide vocational development for offenders under court supervision (the "Prime Contract"). ECF No. 55-3 ¶¶ 1, 3; ECF No. 7 ¶ 2; ECF No. 38 ¶ 1. On November 1, 2022, Greenclean executed a subcontract agreement with Atinus, a Maryland-based company, under which Atinus was to perform program management services "in accordance with the [P]rime [C]ontract" for a one-year term (the "Subcontract"). *See* ECF No. 55-6; ECF No. 58-2; *see also* ECF No. 7 ¶ 1; ECF No. 38 ¶ 1; ECF No. 55-11 at 8. Greenfield, a representative of Atinus, represented Greenclean as a Program Manager ("PM") under the Subcontract. ECF No. 55-3, ¶¶ 1, 6; *see also* ECF No. 55-14. The Prime Contract assigns various tasks to the PM, including identifying vocational training programs, completing business agreements with training providers, and enrolling offenders into the programs. ECF No. 58-2 at 25–26.

Under the terms of the Subcontract, Greenclean agreed to pay Atinus $5,000 per month for 12 months, plus a $250 bonus for every student who entered a selected course and an additional "bonus payout" of "savings up to $3000.00 . . . ." ECF No. 55-6 § 15. According to Greenfield, this payment structure was intended to incentivize Atinus to complete its required tasks more efficiently or at lower costs. ECF No. 55-3 ¶ 8.

---

[2] Greenclean attaches to its opposition brief an affidavit by Tajuddin Sabree, a Greenclean representative. *See* ECF No. 58-4 (Sabree Aff.). Sabree states that "[he] has personal knowledge of the facts stated in this affidavit." *Id.* ¶ 3. Yet, when declaring under penalty of perjury that the statements in the affidavit are true, Sabree qualifies that declaration, stating that the facts "are true and correct *to the best of my information, knowledge, and belief*." *Id.* ¶ 15 (emphasis added). "An affidavit or declaration 'must be made on personal knowledge[,]'" *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 244 (D. Md. 2012) (quoting Fed. R. Civ. P. 56(c)(4)), and "[t]hat condition is strictly construed in this district[,]" *id.* As judges of this Court have previously declined to consider affidavits made "to the best of [an individual's] knowledge, information and belief[,]" *id.* (citing *Barnett v. Perry*, Civ. No. CCB-11-0122, 2011 WL 5825987, at *7 (D. Md. Nov. 16, 2011)), the Court likewise declines to consider Sabree's affidavit here.

On August 23, 2023, CSOSA notified Greenclean that it was awarding Greenclean a vocational program management contract for the period of September 2023 through September 2024. ECF No. 55-10 at 2. Greenfield was not included on that notification. However, during a conversation between Greenfield and a CSOSA employee, Greenfield was asked if wanted a copy of the award notice. ECF No. 55-12 at 7. The CSOSA employee sent Greenfield a copy of the award notice by email on August 28, 2023. ECF No. 55-10 at 1; ECF No. 55-3 ¶ 13. According to Greenfield, he and the CSOSA employee "operated under the assumption that Atinus and Mr. Greenfield would occupy the program management position on behalf of Greenclean for the following year." ECF No. 55-12 at 7. Greenfield notified Greenclean that he received a copy of the award notice. *Id.*

On September 6, 2023, Greenclean notified Atinus and Greenfield that it did not intend to retain Atinus for program management services for the 2023–24 contract period. ECF No. 58-2. Greenclean reported no issues with Atinus's performance during the Subcontract period. ECF No. 55-7 at 3; ECF No. 58-10 at 3.

In September and October 2023, Greenfield was in communication with Dwayne Ouzts, the owner of Ouzts HVAC and Refrigeration ("OHR"), a subcontractor and vendor that provided vocational training in support of the Prime Contract. ECF No. 60-1 ¶¶ 1–4. The two discussed the rates that OHR charged Greenclean and OHR's financial challenges. *Id.* ¶ 5. During the 2022–23 contract period, OHR charged a rate of $1,500 per student. *Id.* ¶ 6. On October 3, Greenfield sent Ouzts a text message: "For your class moving forward raise your rate to $3500.00 per student. If you decide to keep going[.]" ECF No. 59-9.

Atinus completed its performance of the Subcontract by November 1, 2023. ECF No. 55-11 at 8. Between November and December 2023, Greenfield reached out to Greenclean for

payment of outstanding invoices. ECF No. 55-3, ¶ 9; *see also* ECF No. 55-9. Greenclean acknowledged that it owed Atinus payment but disputed the amounts claimed in several invoices. *Id.* Greenclean ultimately refused to pay the invoices and continues to withhold payment. ECF No. 55-3, ¶¶ 11–12.

## II. PROCEDURAL HISTORY

Atinus initiated this civil action on February 28, 2024, ECF No. 1, and then filed an Amended Complaint, asserting claims against Greenclean for breach of contract and unjust enrichment, ECF No. 7. On March 6, 2025, Greenclean answered the Amended Complaint and filed a Counterclaim[3] against Atinus and Third-Party Complaint against Greenfield. ECF No. 38. Greenclean asserts claims against Atinus and Greenfield for tortious interference with contractual relations, tortious interference with prospective business advantage, and civil conspiracy. *Id.* On April 3, 2025, Atinus and Greenfield filed a joint answer to Greenclean's Counterclaim and Third-Party Complaint. ECF No. 44.

On January 20, 2026, Atinus and Greenfield moved for summary judgment. ECF No. 55. Greenclean filed a response in opposition to the motion, ECF No. 58, and Atinus and Greenfield replied, ECF No. 59. Atinus and Greenfield later filed an additional affidavit in support of their motion for summary judgment. ECF No. 60.

## III. STANDARD OF REVIEW

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

[3] Greenclean refers to its pleading as a Counter-Complaint. *See* ECF No. 38. For clarity, the Court will instead refer to the pleading as a "Counterclaim," consistent with the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 7(a) & 13.

*Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986) (emphasis removed); *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts, *Anderson*, 477 U.S. at 249.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N.C. v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citing *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)). The burden then shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." *Bouchat*, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e)).

## IV. DISCUSSION

### A. Atinus's Claim for Breach of Contract

In Count I of its Amended Complaint, Atinus asserts a claim for breach of contract against Greenclean for failure to make payments in accordance with the Subcontract. ECF No. 7 at 4. Atinus now moves for summary judgment on Count I.

"To prevail in an action for breach of contract [under Maryland law], a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). To establish the latter, a plaintiff must demonstrate that the defendant "fail[ed,] without legal excuse[,] to perform any promise which forms the whole or part of a contract[.]" *Corsair Special Situations Fund, L.P. v. Engineered Framing Sys., Inc.*, 694 F. Supp. 2d 449, 455 (D. Md. 2010), *aff'd*, 442 F. App'x 66 (4th Cir. 2011) (citation omitted).

There is no dispute that the Subcontract between Greenclean and Atinus is valid and obligates Greenclean to pay Atinus for its program management services. *See* ECF No. 55-7 at 1; ECF No. 55-8 at 8–10; ECF No. 58-9 at 9–10; ECF No. 58-10 at 1. The Subcontract provides that Greenclean would pay Atinus "$5,000 per month for 12 months . . . based on a 4-week month[,]" "[a]n additional $250.00 . . . for every student who enters a selected course[,]" and "[a]ny additional savings up to $3,000.00 . . . as a bonus payout." ECF No. 55-6 § 15. Atinus completed its performance of Subcontract as of November 1, 2023. ECF No. 55-11 at 8. In November and December 2023, Atinus contacted Greenclean for payment, and Greenclean did not dispute that a $5,000 payment on a program management invoice was outstanding. ECF No. 55-3 ¶ 9; ECF No. 55-9 at 3. Greenclean continues to admit that it failed to meet its monthly base-pay obligation under the Subcontract for the month of September 2023. *See* ECF No. 55-7 at 2; ECF No. 58-10 at 2. Therefore, it is beyond dispute that Greenclean had a contractual obligation to Atinus that it breached.

Still, part of Atinus's breach-of-contract claim remains in dispute. While it is clear that Greenclean agreed to pay "[a]n additional $250.00 . . . for every student who enters a selected course[]" and an additional bonus based on certain savings, ECF No. 55-6 § 15, the full amount

Greenclean owed Atinus under the Subcontract remains in dispute. Greenclean admits that it owed Atinus $33,525 under the Subcontract and withheld this payment, ECF No. 55-8 (Ex. 4) at 8; ECF No. 58-9 (Ex. 8) at 8, while Atinus calculated its damages to exceed $102,000, ECF No. 55-11 (Ex. 7) at 4. This dispute cannot be resolved as a matter of law on the record presently before the Court.

Because there is no genuine dispute that Greenclean had a contractual obligation to pay Atinus amounts for its program management services which Greenclean failed to pay, the Court finds that summary judgment in Atinus's favor is warranted as to liability on Count I. The amount of damages will be determined at trial.

**B. Atinus's Claim for Unjust Enrichment**

In the alternative to its breach-of-contract claim in Count I of the Amended Complaint, Atinus asserts a claim for unjust enrichment in Count II, ECF No. 7 at 4, and now moves for summary judgment.

Under Maryland law, a claim of unjust enrichment requires that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew or appreciated the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying for it. *See Hebbeler v. First Mariner Bank*, Civ. No. ELH-17-3641, 2020 WL 1033586, at *23 (D. Md. Mar. 2, 2020) (collecting cases). However, such a claim is barred where an express contract governs the subject matter of the dispute. *Id.* (citing *Janusz v. Gilliam*, 947 A.2d 560, 567 (Md. 2008)).

As discussed in Part IV.A *supra*, there is no genuine dispute that a valid and express contract existed between Atinus and Greenclean, and that contract governs the subject matter of their dispute. Accordingly, the Court finds that Atinus is not entitled to summary judgment on its alternative claim for unjust enrichment.

**C. Greenclean's Claims for Tortious Interference with Contractual Relations and Prospective Business Advantage**

In Counts I and II of its Counterclaim and Third-Party Complaint, Greenclean asserts claims against Atinus and Greenfield for tortious interference with contractual relations and prospective business advantage. ECF No. 38 at 6–8. Atinus and Greenfield move for summary judgment in their favor on these claims.

Tortious interference with contractual or business relations requires the following elements: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *havePOWER, LLC v. Gen. Elec. Co.*, 183 F. Supp. 2d 779, 784 (D. Md. 2002) (quoting *Natural Design, Inc. v. The Rouse Co.,* 485 A.2d 663, 675 (Md. 1984)); *see also State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 569 (D. Md. 2019) (citation omitted). In this context, "malice . . . means a wrongful act done intentionally without just cause or excuse." *havePOWER, LLC*, 183 F. Supp. 2d at 784 (citation modified).

"The tort of tortious interference has 'two general manifestations[]'" under Maryland law: (1) "tortious interference with a contract"; and "tortious interference with business or economic relations." *State Farm*, 381 F. Supp. 3d at 569 (quoting *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 117 (Md. 1994)). The former tort involves "inducing the breach of an existing contract," and the latter involves "maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." *Id.* at 569 (quoting *Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010)) (internal quotation marks omitted). "[W]rongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d

535, 541 (D. Md. 2006) (quoting *Carter v. Aramark Sports & Ent. Servs.*, 835 A.2d 262, 280 (Md. Ct. Spec. App. 2003), *cert. denied*, 844 A.2d 427 (Md. 2004)).

Atinus and Greenfield argue that Greenclean cannot prevail on its tortious interference claims because it cannot prove any "independently wrongful or unlawful action" by either counter-defendant. ECF No. 55-1 at 16. The record in this case is not so clear.

The requisite "independently wrongful or unlawful" act may "include common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violations of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Baron*, 471 F. Supp. 2d at 541 (quoting *Carter*, 835 A.2d at 280) (internal quotation marks omitted). But "[w]hat is improper or wrongful conduct is incapable of precise definition[;]" it may include "conduct that is quite subtle . . . ." *Macklin*, 639 A.2d at 119 (citations omitted). "[O]rdinarily[,] whether particular conduct is proper or improper is a factual question to be determined on the basis of all the facts and circumstances." *Id.* (citing *Natural Design*, 485 A.2d at 675).

The record in this case includes evidence that, after obtaining a copy of Greenclean's 2023–24 contract notice in his capacity as PM, and after Greenclean notified him that it would not retain him as PM for that upcoming term, Greenfield directed at least one vendor (OHR) to increase the rate it charged Greenclean to from $1,500 to $3,500 per student if it decided to continue its business relationship with Greenclean. ECF No. 58-3 at 1; ECF No. 58-5; ECF No. 58-6; ECF No. 60-1. This evidence could support a finding that Greenfield intentionally used information he obtained as Greenclean's PM to harm Greenclean in its prospective business relationship with OHR. A reasonable juror could find this conduct to be "independently wrongful[,]" *Baron*, 471 F. Supp. 2d at 541, or "improper" under Maryland's flexible, fact-bound standard, *Macklin*, 639 A.2d at 119.

Having been terminated for the 2023–24 term, Atinus and Greenfield no longer had any incentive to negotiate rates with vendors that would be favorable to Atinus and Greenclean.

From the foregoing evidence, a reasonable juror could find Greenfield's conduct, whether on his own behalf or on the behalf of Atinus, breached a duty of loyalty owed to Greenclean and therefore wrongful, independently of any harm his conduct caused Greenclean. *See Broadway Servs., Inc. v. Comptroller of Md.*, 272 A.3d 800, 813 (Md. 2022) (recognizing that "the creation of an agency relationship causes the agent 'to be a fiduciary, that is, a person having a duty, created by his [or her] undertaking, to act primarily for the benefit of another in matters connected with his [or her] undertaking[]'") (citation omitted); *Nat'l Ass'n of State Veterans Homes v. Donor*, No. 23-CV-02787-LWW, 2025 WL 1191789, at *1 (D. Md. Apr. 24, 2025) (finding a "fiduciary relationship based on an agency relationship" between organization and independent contractor). Further, a reasonable juror could find that, by directing a vendor to *increase* the fee it charged Greenclean, Atinus and Greenfield acted maliciously, with the intent to injure Greenclean economically, and "without just cause or excuse." *havePOWER, LLC*, 183 F. Supp. 2d at 784. Additionally, Greenclean has presented evidence that, after Greenfield's inducement, Greenclean was required to pay $50,000 in additional fees to OHR.[4] ECF No. 55-8 at 6; ECF No. 58-7.

Next, Atinus and Greenfield argue Greenfield's actions cannot constitute "interference" because they were "within the course and scope of his relationship with Greenclean and Atinus and as Program Manager . . . ." ECF No. 55-1 at 15. But this is a disputed matter that precludes judgment as a matter of law.

[4] Atinus and Greenfield present an affidavit from OHR's owner stating that the $1,500-per-student rate it initially charged Greenclean proved unsustainable and that he negotiated a new rate of $2,000 per student rate for the 2023-24 period "solely in the best interests of OHR . . . ." ECF No. 60-1. This affidavit confirms that OHR's owner ended up negotiating a higher rate from Greenclean after Greenfield directed him to do so. It does not disprove the notion that Greenfield's interference caused an injury to Greenclean.

For a plaintiff to prevail on a tortious interference claim, "the defendant [must] not be a party to the economic relationship." *Omaha Prop. Manager, LLC v. Mustafa*, No. 22-CV-001623-LKG, 2025 WL 744049, at *8 (D. Md. Mar. 7, 2025) (citing *Blondell*, 991 A.2d at 97). "Under Maryland law, a tortious interference . . . claim requires three actors: two parties who have a business relationship and a third party who interferes with that relationship." *D.J.'s Diamond Imports, LLC v. Silverman Consultants, LLC*, Civ. No. WMN-11-2027, 2013 WL 6147697, at *3 (D. Md. Nov. 21, 2013) (citing *K & K Mgmt., Inc. v. Lee*, 557 A.2d 965, 973 (Md. 1989)). The defendant must be a non-party to the business relationship because "a party to a contract cannot tortiously 'interfere' with his or her own contract; the party can, at most, breach it." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 313 (Md. Ct. Spec. App. 1995) (citations omitted). Likewise, "an agent of the party to a contract, acting within the scope of the agency, [cannot] 'interfere' with the contract." *Id.* (citation omitted).

Here, it is undisputed that Greenfield was authorized to serve as PM on Greenclean's behalf under the Subcontract at the time he induced OHR to increase its fees. ECF No. 55-3 ¶¶ 1, 6; ECF No. 55-14. But the scope of Greenfield's agency and authority in his role is disputed by the parties. *See, e.g.*, ECF No. 55-7 at 3; ECF No. 58-10 at 3. Notably, the tasks prescribed for a program manager in the Prime Contract include "identify[ing] and complet[ing] business agreements . . . with training providers." ECF No. 58-2 at 25. However, given that Greenclean had terminated Atinus and Greenfield on September 6, 2023, it is not clear from the record that Greenfield was authorized to direct or induce OHR to increase the rate it charged Greenfield for the 2023–24 contract period. The Court finds a genuine dispute as to the scope of Greenfield's authority after notice of his termination, which precludes finding, as a matter of law, that Greenfield acted as

Greenclean's agent during its communications with OHR's owner on October 3, 2023. *See* ECF No. 55-7 at 3; 55-8 at 15; ECF No. 55-12 at 6–7; ECF No. 58-9 at 15; ECF No. 58-10 at 3.

In sum, genuine disputes over whether, in his communications with OHR's owner, Greenfield acted wrongfully and with the intent to injure Greenfield, or acted as Greenclean's agent and with its authorization, and whether his communications caused injury to Greenclean, all preclude summary judgment in favor of Atinus and Greenfield on Greenclean's tortious interference claims.

**D. Civil Conspiracy**

In its Counterclaim and Third-Party Complaint, Greenclean asserts a civil conspiracy claim against Atinus and Greenfield. ECF No. 38 at 8–9. The counter-defendants now move for summary judgment, arguing that the civil conspiracy claim is not supported by an underlying tort and is barred by the intracorporate conspiracy doctrine. ECF No. 55-1 at 14–21.

"A claim for civil conspiracy requires proof of: '[(1)] [a] confederation of two or more persons by agreement or understanding; [(2)] some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and [(3)] [a]ctual legal damage resulting to the plaintiff.'" *White v. City of Annapolis by & through City Council*, 439 F. Supp. 3d 522, 546 (D. Md. 2020) (second and fifth alterations in *White*) (quoting *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007)). "[C]onspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Id.* (quoting *Lloyd*, 916 A.2d at 284). Additionally, "[b]oth the . . . Fourth Circuit and Maryland apply the intracorporate conspiracy doctrine, which provides that a conspiracy between a corporation and its agent acting within the scope of his employment is a legal impossibility." *Aarow Elec. Sols. v. Tricore Sys., LLC*, 693 F. Supp. 3d 525 (D. Md. 2023)

(quoting *Tffi Corp. v. Williams*, Civ. No. DKC-13-1809, 2016 WL 470865, at *8 (D. Md. Feb. 8, 2016)); *see also Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352 (4th Cir. 2013).

There is no genuine dispute that, in all events relevant to the claims asserted in this case, Greenfield acted as an agent of Atinus and within the scope of his employment. Therefore, any claim by Greenfield founded on the theory Atinus and Greenfield conspired with each other to engage in tortious conduct at Greenclean's expense, *see* ECF No. 38 at 8, fails as a matter of law under the intracorporate conspiracy doctrine. Atinus and Greenfield are entitled to summary judgment on this claim.

## V. CONCLUSION

For the reasons stated herein, it is by the United States District Court for the District of Maryland hereby ORDERED that Atinus and Greenfield's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. The motion is granted as to Greenclean's liability for breach of contract, and Greenclean's civil conspiracy claim is dismissed. The issue of Atinus's damages for Greenclean's breach of contract, and Greenclean's tortious interference claims against Atinus and Greenfield, shall proceed to trial.

The Clerk SHALL MODIFY the docket to reflect the correct spelling of the defendant/counter-plaintiff's name: Greenclean, Inc.

_September 24, 2026___
Date

/S/
Matthew J. Maddox
United States District Judge